UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

DEBRA BOUCHER,          )
                                 )
       Plaintiff,          )
                                 )
         v.             )     Civil Action No.:
                                 )
NORTHEAST BANK,       )
                                 )
       Defendant.      )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Debra Boucher, by and through the undersigned counsel, complains of Defendant Northeast Bank as follows:

## INTRODUCTION

1.     This action arises out of the unlawful employment actions taken by Defendant Northeast Bank against Plaintiff Debra Boucher in violation of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"), the Maine Family Medical Leave Act, 26 M.R.S.A. §843 *et seq.* ("MFMLA"), and for constructive discharge. The illegal practices alleged below were committed within the state of Maine.

## JURISDICTION AND VENUE

2.     Jurisdiction properly lies in this Court pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617(a)(2) and pursuant to the doctrine of supplemental jurisdiction over the state-based MFMLA claim.

3.     Venue properly lies in this Court pursuant to 28 U.S.C. 1391.

## JURY DEMAND

4.      Plaintiff demands trial by jury of all claims, to the extent allowed by law.

## PARTIES

5.      Plaintiff Debra Boucher ("Plaintiff Boucher") resides in Litchfield, Maine. She first started working for Northeast Bank in 1998. She remained employed by Northeast Bank until November 15, 2019, when she resigned from her position as a Commercial Loan Escrow Specialist.

6.      In the year preceding her resignation, Plaintiff Boucher worked more than 1250 hours, primarily at Defendant Northeast Bank's Lewiston, Maine location. At all times relevant to this complaint, Plaintiff Boucher performed her job in a satisfactory fashion.

7.      Defendant Northeast Bank is a Maine-based full-service financial institution with approximately 180 employees.

## FACTUAL ALLEGATIONS

**A.      Defendant Northeast Bank Approves Plaintiff Boucher's Request For Intermittent FMLA Leave To Care For Her Mother's Serious Health Condition.**

8.      Plaintiff Boucher was hired by Defendant Northeast Bank in October of 1998.

9.      Plaintiff Boucher continued working for Defendant Northeast Bank full-time from 1998 until she was constructively discharged on November 15, 2019.

10.      In the summer of 2019, Plaintiff Boucher's mother was diagnosed with the serious health condition of dementia and possibly Alzheimer's. As a result, her mother was incapacitated and required frequent medical treatment, as well as assistance with daily living activities, medication compliance, and related transportation. Plaintiff Boucher's mother's condition was permanent and was such that she could require emergent medical care at any time 24 hours a day, seven days a week.

11.     Plaintiff Boucher's mother lives alone. Because none of Plaintiff Boucher's siblings lives locally, she was the only immediate family member available to assist her mother when her serious medical condition required care.

12.     On August 16, 2019, Plaintiff Boucher contacted Clarissa Smith, who was a Payroll and HR Administrator employed by Defendant Northeast Bank. Plaintiff Boucher contacted Ms. Smith to request the FMLA paperwork she needed to complete to apply for leave to care for her mother.

13.     In response to the request, on or about August 16, 2019, Defendant Northeast Bank sent Plaintiff Boucher the FMLA paperwork. Once completed, Heidi Jacques ("Ms. Jacques"), a senior vice president with Defendant Northeast Bank and its Director of Human Resources, would review the request. Ms. Jacques worked at the same location in Lewiston, Maine as Plaintiff Boucher.

14.     On August 22, 2019, Defendant Northeast Bank received Plaintiff Boucher's completed FMLA application

15.     The relevant portion of the application completed by Plaintiff Boucher's mother's doctor indicated that Plaintiff Boucher's mother's medical condition incapacitated her for a single continuous period of time and that her condition caused episodic flare-ups.

16.     On September 4, 2019, Defendant Northeast Bank notified Plaintiff Boucher that her application for protected leave under the FMLA had been approved.

17.     Plaintiff Boucher's approved leave entitled her unscheduled leave due to the nature of her mother's serious medical condition and that fact that the need for leave would be unforeseeable.

**B.      Plaintiff Boucher's Mother Is Seriously Injured In A Fall.**

18.     On or about the evening of October 17, 2019, Plaintiff Boucher's mother fell.

19.     The fall broke Plaintiff Boucher's mother's right shoulder and dislocated her left shoulder. These injuries, when coupled with her dementia, required continuous care until Plaintiff Boucher could get her mother placed in an appropriate rehabilitation facility.

20.     On the morning of October 18, 2019, Plaintiff Boucher called Kim Medeiros and left her a message explaining what had happened with her mother. Later that day, Ms. Madeiros responded via text. She told Plaintiff Boucher to take care of her mother and not to worry about work. Plaintiff Boucher responded by thanking Ms. Medeiros and telling her that she will keep her updated about the situation.

21.     On October 18 Plaintiff Boucher also told Alizabeth Dowling ("Ms. Dowling") about her mother's fall. Ms. Dowling was Plaintiff Boucher's team leader.

22.     On October 21, 2019, Ms. Dowling texted Plaintiff Boucher and asked how her mother was doing. Plaintiff Boucher responded that she was hoping to get an update from the doctors soon. Ms. Dowling told her to take the time she needed.

23.     On October 22, 2019, Plaintiff Boucher met in person with Ms. Jacques to update her about the status of her mother's serious health condition. During the meeting she told Ms. Jacques about the injuries her mother suffered, that she needed to be placed in a rehabilitation facility, but that until that could be done she would need to remain out of work. She also told Ms. Jacques that she believed she would need to be available to assist in her mother's care in the future.

24.     At the conclusion of the meeting Ms. Jacques told Plaintiff Boucher to keep her updated. Following the meeting, Plaintiff Boucher met visited with coworkers to update them on what had happened with her mom and tell them how her meeting with Ms. Jacques went.

**C.** **Ms. Jacques Denies Plaintiff Boucher's FMLA And Demands She Return To Work.**

25.    On Thursday October 24, 2019, Plaintiff Boucher received a telephone call from Ms. Jacques.

26.    Ms. Jacques told Plaintiff Boucher that there must have been a miscommunication, that she did not know that Plaintiff Boucher had not been working. Ms. Jacques sounded upset. She told Plaintiff Boucher that while she understood what was going on with her mother, she has a business to run and Plaintiff Boucher had to return to work. She denied that Plaintiff Boucher's absences were protected by FMLA. Ms. Jacques went on to criticize Plaintiff Boucher for poor communication.

27.    Plaintiff Boucher was confused and speechless. She explained to Ms. Jacques that there was a meeting scheduled for the following day to discuss her mother's condition and the plan moving forward. She told Ms. Jacques she would keep her updated and the phone call ended.

28.    After the call with Ms. Jacques, Plaintiff Boucher called Louise Gillis ("Ms. Gillis"), who was the Manager of the Commercial Loan Division at Defendant Northeast Bank, and left a message with her about her conversation with Ms. Jacques.

29.    Later that afternoon, Ms. Gillis returned Plaintiff Boucher's call. During the call, Plaintiff Boucher explained what had happened with her mom, what she had told Ms. Jacques and others over the last week, and that Ms. Jacques had just demanded that she return to work. She explained that in September the Bank had approved FMLA leave so she could care for her mom.

30.    In response, Ms. Gillis told Plaintiff Boucher that everyone in her department was very busy, and asked whether she should get a temp worker. Plaintiff Boucher told her the same

thing she had told Ms. Jacques, that there was a meeting about her mom the next day and she hoped to know more after it. The phone call ended with Ms. Gillis instructing Plaintiff Boucher to update only her moving forward.

31.     Plaintiff Boucher was absent from work to care for her mother from October 18 until October 25. These absences were for reasons that were protected under the FMLA. Furthermore, they were consistent with, and protected by, the FMLA leave that Defendant Northeast Bank had already approved in September of 2019.

**D.     Defendant Northeast Bank Refuses To Provide Plaintiff Boucher FMLA Leave For Her Mother. Plaintiff Boucher Is Forced To Resign.**

32.     Plaintiff Boucher's conversations with Ms. Jacques and Ms. Gillis made her scared. She did not understand why she was being told she had to return to work and could not use FMLA protected leave. She was concerned that if she used it, she would lose her job, which she could not afford. At the same time, she knew that her mother desperately needed her care, and would continue to need it intermittently for the foreseeable future.

33.     On Thursday afternoon, Plaintiff Boucher also spoke with Ms. Dowling, who told her about a phone conference that Ms. Dowling had attended that day with Ms. Jacques, Ms. Gillis, and Ms. Madeiros. The purpose of the call was to discuss Plaintiff Boucher's absence from work to care for her mother's serious medical condition.

34.     During the call, Ms. Jacques repeatedly told the others on the call that Plaintiff Boucher did not have FMLA to care for her mother.

35.     When Plaintiff Boucher learned about the conference call she was beyond perplexed. She knew that caring for her mother qualified her for FMLA leave. In addition, Defendant Northeast Bank had already approved FMLA leave to care for her mother. She did not

understand why Ms. Jacques was telling members of the Bank's management team, including her boss, that she did not have FMLA to care for her mother.

36.     The stress of caring for her mother and worrying about whether doing so would cause her to be fired weighed tremendously on Plaintiff Boucher. She decided that her only choice was to return to work.

37.     On the morning of October 25, 2019, Plaintiff Boucher emailed Ms. Gillis. The scheduled meeting about her mother had not yet happened. In her email, Plaintiff Boucher told Ms. Gillis that regardless of what happened at the meeting about her mom, she would return to work the following Monday, October 28. Ms. Gillis thanked her for the update.

38.     Plaintiff Boucher went to work at Defendant Northeast Bank on Monday, October 28, 2019. She was upset and confused that she had been denied FMLA to care for her mother.

39.     That morning she emailed Ms. Gillis. Plaintiff Boucher attached her approved FMLA paperwork to the email to show that she did have FMLA. She also asked to speak with Ms. Gillis about what was going on.

40.     In response to receiving the approved FMLA paperwork, Ms. Gillis asked Plaintiff Boucher "what am I supposed to do with this?"

41.     On October 28, 2019, Plaintiff Boucher spoke with Ms. Gillis about the fact that Ms. Jacques was denying her FMLA leave to care for her mother.

42.     Ms. Gillis apologized to Plaintiff Boucher for Defendant Northeast Bank's denial of FMLA leave, but told her nothing further. The decision to deny Plaintiff Boucher FMLA leave appeared to be final.

43.     On Tuesday October 29, 2019, Plaintiff Boucher emailed Ms. Gillis again. This time she attached a timeline of events from the prior week to demonstrate what had happened

7

and why she was confused by Ms. Jacques's denial of FMLA and her complaints about Plaintiff Boucher's communication.

44.     On October 29th Plaintiff Boucher also talked with Ms. Dowling about Defendant Northeast Bank's denial of FMLA to care for her mother. Ms. Dowling told her that Ms. Gillis had called her to confirm that the time line that Plaintiff Boucher had emailed her the day before was correct. Ms. Dowling told Ms. Gillis that it was correct.

45.     Despite reaching out to her supervisor and other members of Northeast Bank's management team, at no point did anyone at Northeast Bank tell Plaintiff Boucher that her FMLA was approved. They apologized to her about Ms. Jacques' decision, but acted in conformity with its denial of her right to FMLA.

46.     Plaintiff Boucher's mother remained seriously ill and in need of care and assistance for her serious medical condition. Plaintiff Boucher did not know what to do. Because Defendant Northeast Bank had denied her FMLA leave to care for her mother, it put her in the terrible position of having to choose between caring for her seriously ill mom or staying employed.

47.     On November 5, 2019 Plaintiff Boucher resigned her position. She felt she had no other choice but to leave. She could not work at the expense of her mother's health and safety. Her mother still needed her assistance, and would continue to in the future. Defendant Northeast Bank knew what was going on, but had denied her right to protected leave under the FMLA.

## COUNT I
### FMLA (Interference and Retaliation)

48.     Plaintiff Boucher re-alleges and herein incorporates by reference Paragraphs 1- 47 as if set forth in their entirety herein.

49.     The FMLA provides eligible employees protected leave "in order to care for …a parent…of the employee, if such…parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

50.     The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempted exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

51.     The FMLA also makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

52.     In September of 2019 Defendant Northeast Bank had certified Plaintiff Boucher's request for intermittent FMLA for her mother's serious health condition.

53.     In October of 2019 Ms. Boucher's mother fell, breaking one shoulder and dislocating another. This, in addition to her diagnosed dementia, required Ms. Boucher's care and assistance.

54.     Plaintiff Boucher's mother's injury and medical condition qualified as a serious medical condition pursuant to the FMLA.

55.     Plaintiff Boucher told her superiors at Defendant Northeast Bank what had happened to her mother, and that she needed care.

56.     Less than one week later, Defendant Northeast Bank's HR Director contacted Plaintiff Boucher to tell her that she understood what had happened with her mom, but that she had a business to run and Plaintiff Boucher needed to get back to work.

57.     Defendant Northeast bank denied Plaintiff Boucher FMLA leave to care for her mother.

58.     Plaintiff Boucher complained to her supervisor that she should not have been denied FMLA. She explained what her mom was suffering from. She provided documents to support that she had been approved for FMLA to care for her mother.

59.     In response, Defendant Northeast Bank apologized for making her return to work, but did never communicated to Plaintiff Boucher that she could take FMLA leave, despite Plaintiff Boucher's attempt to get answers.

60.     Defendant Northeast Bank interfered with Plaintiff Boucher's right to FMLA by denying her use of federally protected FMLA leave to provide care to her mother for her mother's serious health condition.

61.     Defendant Northeast Bank's conduct in interfering was willful and done in bad faith because it knew Plaintiff Boucher's mother had a serious health that qualified for FMLA. It had approved her application for FMLA leave to care for her mother approximately 6 weeks prior to her mother's fall.

62.     By preventing Plaintiff Boucher from utilizing protected leave, Defendant Northeast Bank's conduct denied or otherwise interfered with her substantive rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

63.     Defendant Northeast Bank interfered with, restrained or denied her the exercise of, or attempted exercise of, her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1) and (2).

64.     Alternatively, Defendant Northeast Bank's termination of Plaintiff Boucher was done to discriminate and/or retaliate against her because of her protected use of FMLA leave in violation of 29 U.S.C. § 2615(a)(1) and (2). For the foregoing reasons, this retaliatory conduct was willful and done in bad faith.

## COUNT II
### Constructive Discharge

65.     Plaintiff Boucher re-alleges and herein incorporates by reference Paragraphs 1- 64 as if set forth in their entirety herein.

66.     Because Plaintiff Boucher's mother remained seriously ill and in need of care and assistance for her serious medical condition, and because Defendant Northeast Bank denied her FMLA and MFMLA leave to care for her seriously ill mother, Plaintiff had no other option but to resign her position.

67.     On November 5, 2019, Plaintiff Boucher resigned from Northeast Bank.

68.     Northeast Bank constructively discharged Plaintiff Boucher.

## COUNT III
### For Violation of the Maine Family Medical Leave Act

69.     Plaintiff Boucher re-alleges and hereby incorporates by reference Paragraphs 1-68 as if set forth in their entirety herein.

70.     Plaintiff Boucher's mother suffers from a serious health condition as defined by 26 M.R.S.A. §843(6).

71.     Plaintiff Boucher was entitled to leave under the MFMLA, 26 M.R.S.A. §844, for her mother's serious health condition.

72.     Defendant Northeast Bank interfered with and/or unlawfully discriminated against Plaintiff Boucher in connection with her right to leave to leave to care for her mother in violation of 26 M.R.S.A. § 847.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order providing as follows:

     A.     On Count I, order Defendant Northeast Bank to make Plaintiff whole for lost wages and benefits and to pay liquidated damages in an amount equal to the sum of lost wages and benefits as well as all other damages provided by the federal statute;

     B.     On Count II, that the Court order and grant Plaintiff all employment benefits she would have enjoyed had she not been constructively discharged;

     C.     On Count III, order Defendant Northeast Bank to make Plaintiff whole for lost wages and benefits and to pay liquidated damages in an amount equal to $100 per day that the violation has continued, as well as payment of all additional damages provided for by 26 M.R.S.A. § 848;

     D.     On all Counts, order Defendant Northeast Bank to pay pre-judgment and post-judgment interest, costs, expenses, and reasonable attorneys' fees;

     E.     Grant such additional relief as this Court deems appropriate.

     Respectfully submitted,

Dated: April 23, 2020

*/s/ Samuel S. Riotte*_____
Samuel S. Riotte
McTEAGUE HIGBEE
Four Union Park
P.O. Box 5000
Topsham, ME 04086
(207) 725-5581
sriotte@mcteaguehigbee.com

*Counsel to Plaintiff*